**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruth Bradburn Mitchell; Kenneth Christopher Mitchell,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>City of Flagstaff; Roy Taylor,<br><br>　　　　Defendants. | No. CV 11-08140-PCT-FJM<br><br>**ORDER** |

The court has before it plaintiffs' motion for sanctions against defendants due to spoliation of evidence (doc. 173), defendants' response (doc. 179), defendants' motion for extension of page limit (doc. 178), and plaintiffs' reply (doc. 193). We also have before us plaintiffs' amended motion for sanctions against defendants for intentional misrepresentations to the court (doc. 175), defendants' response (doc. 189), and plaintiffs' reply (doc. 196).

**I**

In their first motion, plaintiffs argue that sanctions are appropriate because defendants failed to preserve the mini-blinds that were on the window through which Officer Taylor fired the shots that killed Kenneth Mitchell. Plaintiffs argue that a dispute of fact exists as to whether the blinds were up or down when the shots were fired, a fact they claim is relevant to Officer Taylor's knowledge and perception. Plaintiffs argue that defendants should be sanctioned for willful spoliation, in the form of default judgment in plaintiffs' favor, because the Flagstaff Police Department knew, or should have known, that the blinds would be

1 crucial evidence in any criminal or civil investigation and therefore should have been
2 preserved.

3       "A party seeking sanctions for spoliation of evidence must prove the following
4 elements: (1) the party having control over the evidence had an obligation to preserve it
5 when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable
6 state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims
7 or defenses of the party that sought the discovery of the spoliated evidence." Surowiec v.
8 Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quotation omitted).
9 The "duty to preserve arises when a party knows or should know that certain evidence is
10 relevant to pending or future litigation." Id.

11       It appears that the relevancy of the mini-blinds did not occur to either party until on
12 or about August 20, 2012, two years after the shooting, when Michael Dunhill, the apartment
13 complex maintenance person, submitted an affidavit stating that he had inspected and
14 removed the blinds sometime after the shooting at which time he observed two bullet holes
15 in the blind slats. Motion, ex. B. Apparently, Mr. Dunhill did not share this information with
16 anyone until he submitted his affidavit two years later.

17       At the time of the investigation no evidence suggested that the mini-blinds were down
18 at the time of the shooting, or were otherwise relevant to the investigation. In fact, all of the
19 evidence recorded at the time of the early investigation suggested that the mini-blinds were
20 pulled up. See e.g., Officer Murray interview, Response, ex. 6; Officer Martinet Interview,
21 id. ex. 7; Officer Gray interview, id. ex. 8; plaintiff Ruth Mitchell interview, id. ex. 11.
22 Although plaintiffs attempt to recast and minimize the significance of these witnesses'
23 statements, they offer no evidence tending to show either that the blinds were down or that
24 defendants knew or should have known that the blinds were relevant to future litigation.
25 Instead, plaintiffs argue only that (1) blinds on a window that is shot through are always
26 relevant, and (2) photographs taken immediately after the shooting show the blinds pulled
27 up at an angle, which must indicate that Officer Taylor "hurriedly pulled up" the blinds "in
28 an effort to cover-up the fact that they were shot through." Reply at 3. This kind of

- 2 -

1  speculation does not demonstrate either a duty to preserve or a culpable state of mind, and
2  cannot form the basis of a motion for sanctions. Plaintiffs' motion for sanctions for
3  spoliation of evidence is denied (doc. 173).

**II**

5  Plaintiffs also seek sanctions against defendants based on "defense counsels' repeated
6  and intentional falsifications to this Court." Motion at 1.

7  Plaintiffs asked defendants to make available for off-site inspection 7 specific items
8  of evidence, including the shotgun that Kenneth Mitchell was holding when he was shot, and
9  bullets and bullet fragments discharged from Officer Taylor's firearm. Defendants
10 repeatedly refused plaintiffs' request to release this evidence for off-site inspection and
11 testing, explaining that a such a release is contrary to Flagstaff Police Department ("FPD")
12 protocol, and would compromise the chain of custody, and therefore the reliability and
13 integrity of the evidence. Plaintiffs were given the opportunity to inspect and test the
14 evidence at FPD. Defendants' expert, Lucien Haag, was similarly limited to testing these
15 items at FPD.

16 On August 9, 2012, during Mr. Haag's deposition, plaintiffs' counsel learned that Mr.
17 Haag was allowed to remove from police custody five unspent bullets from Officer Taylor's
18 magazine, which he later expended in the desert by his home. It is important to note that
19 these unspent bullets were not among the 7 specific items requested by plaintiffs. Plaintiffs'
20 counsel asserts that defense counsel "was present, and likely approved the release of
21 evidence to Haag." Motion at 13. He charges that defense counsels' avowals that "no
22 evidence was released" constitute perjury, bad faith, fraud on the court, an abuse of the
23 judicial process, and violations of the professional code of conduct.

24 It is clear from the affidavits, correspondence, and briefing on motions that every
25 discussion, representation, and avowal was made in reference to the testing and inspection
26 of the 7 specific items of evidence requested by plaintiffs. These items are considered "crime
27 scene" evidence because of the possibility that they contain biological material, DNA, or
28 other matter that might be relevant to the underlying investigation, and which could be

1 compromised if removed from the FPD property room. The 5 unspent rounds of ammunition
2 were never at issue. They are not considered "crime scene" evidence as they were never
3 discharged. Response, ex. 4. Plaintiffs' counsel never requested the release of or an
4 opportunity to inspect unspent rounds.

5 Despite his now professed outrage over defense counsels' "repeated and intentional
6 falsifications to this Court," Motion at 1, plaintiffs' counsel waited over 6 weeks to raise the
7 issue with either defense counsel or this Court. Plaintiffs' counsel's argument that "Plaintiffs
8 were prevented from obtaining and testing evidence off-site that could have provided
9 information vital to Plaintiffs' case," id. at 15, is itself misleading. Plaintiffs have never
10 asked to test unspent bullets, nor have they availed themselves of an opportunity to do so.

11 We consider plaintiffs' counsel's motion for sanctions for intentional falsifications to
12 this court itself an attempt to distort facts, slander opposing counsel, and mislead this court.
13 This frivolous motion has improperly and unnecessarily consumed this Court's valuable and
14 limited resources. We deny this motion (doc. 175) and award defendants their fees and costs
15 incurred in responding to it.

### III

17 **IT IS ORDERED GRANTING** plaintiffs' motion for leave to file excess pages (doc.
18 178).

19 **IT IS ORDERED DENYING** plaintiffs' motion for sanctions due to spoliation of
20 evidence (doc. 173).

21 **IT IS FURTHER ORDERED DENYING** plaintiffs' motion for sanctions for
22 intentional misrepresentations to the court (doc. 175), and awarding defendants' fees and
23 costs incurred in responding to the motion.

24 DATED this 31st day of October, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge